UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AL BLANCHE,

               Petitioner,                                  08 Civ. 4751 (RJH)

        - against -                       **MEMORANDUM OPINION**
                                                **AND ORDER**

DR. PIRELLI AND NURSE RICK,
Sing Sing Correctional Facility Medical Personnel

               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Defendants Dr. Pirelli and Nurse Rick move to dismiss Plaintiff's claim for damages under 42 U.S.C. § 1983 and New York law. Plaintiff argues that Defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. For the reasons stated below, the Court grants defendant's motion to dismiss without prejudice.

**BACKGROUND**

      The following summary is drawn entirely from plaintiff's complaint. Plaintiff, an inmate at Sing Sing Correctional Facility, caught his left ring finger in a metal gate, clearly breaking the bone, on February 27, 2007. (Compl. ¶ 25.) Medical personnel at Sing Sing took three x-rays of plaintiff's finger and determined that the finger was fractured and that plaintiff should be taken to Mount Vernon Hospital, a non-Correctional facility institution, to see an orthopedic surgeon. (*Id*.) Mount Vernon medical personnel determined that plaintiff's finger was not fractured, irrespective of the x-rays brought by plaintiff from Sing Sing. (*Id.*) According to plaintiff, a

1

surgeon from Mount Vernon was in Sing Sing on February 28th, 2007, but he was not put on the list to see him.  (Pl. Decl. Ex. B, at 1.)  Plaintiff saw an orthopedic surgeon at Fishkill Correctional Facility on March 15, 2007, but plaintiff alleges that because defendants did not send his x-rays with him, the examination could not be completed, and the appointment had to be rescheduled.  (*Id.* at 3.)  Plaintiff claimed that his finger was becoming gangrenous, and that his stitches were not removed for 14 days.  (*Id.*)  Plaintiff had a subsequent appointment on April 5, 2007, but was told that because of the delay, it was too late to set the finger properly.  (*Id.*)

Plaintiff filed several complaints concerning his medical care, including two letters dated March 9, 2007 and March 21, 2007 sent to the Division of Health, a letter dated March 4, 2007 sent to various prison officials, and a formal grievance made on May 16, 2007.  (Compl. ¶ 22-24.)  While plaintiff makes no detailed allegations concerning the letters to the Division of Health, he did include copies of the March 4, 2007, letter and his grievance with his opposition papers.  (Pl. Decl. Ex. A, B.)  In his March 4, 2007, letter, plaintiff details his complaint against the Mount Vernon medical staff, and the treatment he received at their facility.  (Compl. ¶ 24, Pl. Decl. Ex. A, at 3.)  Plaintiff also requests that the prison keep similar situations from recurring, but he does not mention any problems with the staff at Sing Sing.  (*Id.*)  The letter does not complain about any treatment plaintiff received by either Dr. Pirelli or Nurse Rick, and in fact specifically mentions that another doctor, Dr. Bashki was treating him and had ordered an appointment with the finger specialist on behalf of plaintiff.  (*Id.*)  Plaintiff does allege in the letter that a surgeon was at Sing Sing two days after his accident and that he had not been scheduled to see the surgeon.  (*Id.*)

Plaintiff's grievance details his experience at the hospital and requests that the Department of Correctional Services properly oversee his medical care, but it does not allege any

wrongdoing or neglect on behalf of Dr. Pirelli. (Pl. Decl. Ex. B, at 1.) The grievance form does claim that Nurse Rick wouldn't administer dry dressings. (*Id.*) Plaintiff's grievance form was returned to him on May 21, 2007, stating that "outside medical is not grievable." (*Id.*)

## DISCUSSION

Plaintiff argues that he has suffered from protracted disfigurement of his finger as a result of a lack of timely medical care. He claims that defendants, by their deliberate indifference to his medical needs, have violated the Eighth Amendment's prohibition of cruel and unusual punishment. He claims that Dr. Pirelli, as the Facility Health Services Director, knew of his injury and did not adequately attend to his medical needs. Plaintiff further claims that Nurse Rick failed to reschedule an appointment with an orthopedic surgeon after his initial appointment was cancelled and that because of this delay, plaintiff has suffered permanent damage to his finger.

While plaintiff acknowledges that because he did not appeal the denial of his grievance he did not exhaust his administrative remedies before filing this suit, he maintains that he should be excused from the exhaustion requirement because of special circumstances surrounding his grievance. Plaintiff claims that he was told his complaint was not grievable, and that it was therefore reasonable for him to believe that the administrative grievance process was not open to him. Plaintiff also alleges violations of New York law for medical malpractice, negligence, and negligent hiring and retention.

Defendants maintain that the complaint should be dismissed because plaintiff did not exhaust his administrative remedies. Defendants also argue that should this Court find that failure to exhaust should be excused, the complaint should still be dismissed because plaintiff

failed to state a claim for deliberate indifference to serious medical needs.  Defendants argue that because actual knowledge of injuries is required for a deliberate indifference claim, and plaintiff never alleged that defendants had that knowledge, the complaint cannot survive a motion to dismiss.  Defendants also assert that the Court lacks jurisdiction over plaintiff's state law claims because claims against employees of a corrections facility cannot be brought under New York law.

## I. Exhaustion of Administrative Remedies

While exhaustion of remedies is an affirmative defense, rather than a pleading requirement, *Jones*, 549 U.S. at 215 ("inmates are not required to specially plead or demonstrate exhaustion in their complaints") practically speaking, the difference can be negligible, especially in situations, like this one, where the defense raises the issue.  In this case, plaintiff does not refer to his grievance in his complaint.  He does include it, however in his opposition papers.  "On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 15 (2d Cir. 1989).  However, as defendant also points out, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotations and citations omitted).  The Court views the grievance filed by plaintiff as integral to the complaint.

### A.	Prisoner's Litigation Reform Act

The Prisoner Litigation Reform Act (PLRA), 110 Stat. 1321-71, was enacted, in part, to reduce litigation by prisoners in federal court.  *See Jones v. Bock*, 549 U.S. 199, 202 (2007).  The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit." *Id.* at 202. "The exhaustion requirement 'allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.' " *Harrison v. Goord*, 07-1806, 2009 U.S. Dist. LEXIS 48478, at *14 (S.D.N.Y. June 9, 2009), citing *Jones*, 549 U.S. at 204.  "The Supreme Court has held that 'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they allege excessive force or some other wrong.' " *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007), quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Even if a grievance is rejected as untimely, a prisoner has not necessarily exhausted his administrative remedies.  *See Macias*, 495 F.3d at 41, citing *Woodford*, 548 U.S. at 95 (rejecting argument that denial of grievance as untimely implies exhaustion, explaining that compliance with procedural rules is critical because "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction").

In order to exhaust administrative procedures in New York, an inmate must go through the inmate grievance program.  The Department of Corrections has a three-step procedure, the first step of which requires the inmate to file a complaint with the Inmate Grievance Resolution Committee within 21 days of the alleged incident complained of.  *See* 7 N.Y.C.R.R. § 701.5.

The inmate grievance resolution committee is composed of five members: two inmates, two staff members, and a non-voting chairperson. § 701.4. If the committee dismisses an inmate's grievance, the inmate may file an appeal with the Superintendent within 7 days. § 701.5(c). If the inmate still does not receive a favorable resolution, he or she may further appeal to the Central Office Review Committee within 7 days of the Superintendent's decision. § 701.5(d). An inmate may also request an exception to file an appeal or grievance late if they have missed the deadline. § 701.6(g). An exception may be granted if there are mitigating circumstances for a late complaint, but a complaint may not be filed more than 45 days after the incident. § 701.6(g)(1)(b).

### B.     Special Circumstances

Defendant argues that since plaintiff did not exhaust his administrative remedies, the complaint should be dismissed. Plaintiff responds that special circumstances existed because he was told his complaint was non-grievable. The Court of Appeals has developed a 3-part test to determine if there are any reasons why a prisoner should be excused from exhausting his administrative remedies.[1] *Hemphill v. State of New York*, 380 F.3d 680, 686-691 (2d Cir. 2004). Courts must inquire if the administrative remedies were actually available, if defendant's actions estop defendant from raising the non-exhaustion affirmative defense, and if there are any special circumstances justifying a failure to exhaust. *Id.* Plaintiff does not argue that the grievance process was unavailable to him. *Cf id.* at 687-688 (remanding to district court to ascertain if

---

[1] This test had been called into question after the Supreme Court's decision in *Woodford. See, e.g.*, *Reynoso v. Sweeze,y* 238 Fed. App'x. 660, at *5 (2d Cir. 2007) (holding that because plaintiff could not prevail under 3-part test, the court need not address *Woodford's* effect on such test). Nevertheless, it appears that the Court of Appeals still considers it good law. *See Vogelfang v. Riverhead County Jail Officers*, No. 07-1268, 2009 U.S. App. LEXIS 1914, at *4-*5 (2d Cir. Feb. 2, 2009) (remanding because district court failed to consider if failure of non-exhaustion should be excused under the *Hemphill* line of cases.)

6

defendant's alleged threats to plaintiff made grievance process functionally unavailable, even when in theory process was theoretically available).  Plaintiff also does not contend that defendants' actions should estop them from raising the affirmative defense of non-exhaustion.  *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (remanding to district court to decide if allegations of beatings, threats, denial of grievance forms and writing instruments by defendant estopped defendant from raising exhaustion defense).  Plaintiff does claim, however, that there are special circumstances which excuse him from exhausting his administrative procedures.

In *Hemphill*, the Court of Appeals held that "there are certain special circumstances in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."  *Hemphill*, 380 F.3d at 688 (quotations and citations omitted).

Indeed, special circumstances have been found when inmates have been told that their complaints were not grievable.  In *Giano v. Goord*, the Court of Appeals vacated and remanded a dismissal because plaintiff reasonably interpreted DOCS regulations to mean he could not file a grievance on matters relating to disciplinary proceedings, which was his complaint.  *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004).  The court also noted that because he failed to file a formal grievance, the state would not allow him to file a late claim, meaning that the system was no longer available to him.  *Id; see also Partee v. Goord*, No. 06-15528, 2007 U.S. Dist. LEXIS 54752, at *14 (S.D.N.Y. July 25, 2007) (excusing exhaustion requirement because plaintiff was told in reply to his grievance that his claim was outside purview of IGRC, and he reasonably understood this to mean his dispute was not grievable); *Lewis v. Smith*, No. 05-9243, 2007 U.S. Dist. LEXIS 62346, at *5 (S.D.N.Y. Aug. 22, 2007) (finding special circumstances justifying

failure to exhaust remedies because a supervisor told plaintiff that filing a grievance was not the proper way to address a complaint, and that he should instead write a letter to the Chief Medical Officer at the Department of Health, which he did); *Hairston v. Lamarche*, No. 05-6642, 2006 U.S. Dist. LEXIS 55436 *37 (S.D.N.Y. Aug. 10, 2006) (holding failure to exhaust grievance process excused because inmate's letters achieved the same aim as the grievance process-an investigation.)

While the grievance plaintiff submitted largely concerns the outside medical facility, plaintiff also complained about his unattended medical needs after his return from the hospital. Plaintiff did not know who exactly was responsible for getting him to see a specialist, so he filed a general grievance, after which he was informed that he could not grieve his complaint. Plaintiff also specifically requested in his grievance that DOCS properly oversee his medical treatments, including when he was sent to an outside facility. Plaintiff did not specify individual defendants in his grievance, or lay out specific allegations against them, but he is not required to do so. *See Jones*, 549 U.S. at 219 (concluding that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievance"). The grievance process is meant to put the prison staff on notice of an allegation of impropriety within the prison that the prison then has an opportunity to correct. *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007). This was accomplished. Further, plaintiff's claim that he perceived that the grievance process was not open to him is one reasonable interpretation of the incomplete response he received from the grievance he did file. On balance, the Court concludes that plaintiff's exhaustion requirement is exempted because of special circumstances.

**II      Failure to state a claim**

   **A. Standard of Review**

When a court considers a 12(b)(6) motion, the court "accept[s] as true all facts alleged in the complaint" and "draw[s] all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "In deciding a motion to dismiss, a court should consider only those facts alleged in the complaint as exhibits or incorporated into the complaint by reference." *Falso v. Churchville Chili Central School*, No. 08-1899, 2009 U.S. App. LEXIS 13357, at *2 (2d Cir. June, 23, 2009) (citing *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996)). Detailed factual allegations are not required, but "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). The Court does not need to accept legal conclusions as true. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

   **B. Eighth Amendment Claim**

To establish an Eighth Amendment claim for medical indifference, plaintiffs must prove that "defendants were deliberately indifferent to a serious medical need." *Fox v. Fischer*, 242 F. App'x. 759, 760 (2d Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-835 (1994)). "Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. County of Orange*, 248 Fed. App'x. 232, 236 (2d Cir.

9

2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The plaintiff must prove both objective and subjective elements to satisfy a deliberate indifference claim.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  "Objectively the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Id.*  (quotations and citations omitted).  There is no "settled, precise metric guide to a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

As an initial matter, the Court concludes that plaintiff's injuries satisfy the objective prong.  While courts in this Circuit have held that as a matter of law, a broken finger does not meet the objective, sufficiently serious test,  *see Colon v. City of New York*, No. 08-3142 2009, 2009 U.S. Dist. LEXIS 43746, at *21 (S.D.N.Y. May 21, 2009) (collecting cases where withholding medical treatment for a broken finger was held to not be sufficiently serious to constitute a constitutional violation),  the Court of Appeals has held that "a condition of urgency, that may result in degeneration or extreme pain" is sufficiently serious.  *Chance v. Armstrong*, 143 F.3d 698, 702 (quotations and citations omitted).  Here, the bone in plaintiff's finger was broken, he suffered severe pain, and, importantly, is left with "protracted disfigurement of his finger" (Compl. ¶ 36.)

"Subjectively, the charged official must act with a sufficiently culpable state of mind.  According to the United States Supreme Court, the subjective element of deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Hathaway*, 99 F.3d at 553 (quotations and citations omitted).  The required culpable mental state is likened to that of criminal recklessness, where the "prison official 'knows of and disregards an excessive risk to

10

inmate health or safety; the official must both be aware of acts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Farmer*, 511 U.S. at 837).  An "Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.  Negligence by a physician is not sufficiently severe to support a § 1983 claim.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*

While it is reasonable to infer that some prison officials had some knowledge of plaintiff's condition from the three letters he sent in March, 2007, it is not reasonable to infer from the allegations in plaintiff's complaint that Dr. Pirelli or Nurse Rick had knowledge of any substantial risk of serious harm to plaintiff's finger and disregarded it.  Plaintiff does not allege any facts suggesting that either Dr. Pirelli or Nurse Rick knew of the risk to plaintiff's finger and disregarded it.  Plaintiff states only that Dr. Pirelli was the Facility Health Services Director, and that Nurse Rick was a nurse employed by Sing Sing.  There is no allegation that either Nurse Rick or Dr. Pirelli were responsible for getting him to a specialist.  The Court notes that in his grievance, plaintiff alleged that Nurse Rick would not administer dry dressings.  Refusing to administer dry dressings, however, did not in itself expose plaintiff to a serious risk of bodily harm, and even if it did, there is no allegation that Nurse Rick knew of such a risk.  Defendants must have known of and disregarded an excessive risk to plaintiff's safety, *Hathaway*, 99 F.3d at 553, and plaintiff has failed to allege facts giving rise to a plausible inference of such knowledge.  Accordingly, the complaint does not sufficiently allege a claim for an Eighth Amendment violation.

### III. Leave to Amend

In considering granting leave to amend a complaint, a court "should freely give leave when justice so requires." Fed .R. Civ. P. 15(a). However, the Court is not required to grant leave to amend and should not when amendment would be futile. *Acito v. IMCERA Group*, 47 F.3d 47 55 (2d Cir. 1995) ("Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. One good reason to deny leave to amend is when such leave would be futile.") Here, the Court concludes that plaintiff may be able to amend his complaint so that it states a claim, and therefore grants leave to amend.

#### A. Supervisory Liability: Dr. Pirelli

In his response to defendant's motion to dismiss, plaintiff now contends that he should be able to proceed against Dr. Pirelli under a theory of supervisory liability. Plaintiff alleges that Dr. Pirelli is responsible as the supervisor of Sing Sing's medical personnel for failing to ensure that Nurse Rick and other medical personnel effected plaintiff's appointment with a specialist in a proper and timely manner. However, "the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 129 S. Ct. at 1949. Plaintiffs attempting to prove supervisory liability must allege personal involvement by the defendant. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "If a supervisor's steps are proven so meaningless or blatantly inadequate to the task that he may be said to be deliberately indifferent notwithstanding his nominal supervisory efforts, liability will lie." *Reynolds v. Giuliani*, 506 F.3d 183, 196 (2d Cir.

2007). Additional evidence submitted by Plaintiff after the complaint shows that he informed Dr. Pirelli by letter of his condition. (Compl. ¶24, Pl. Decl. Ex. A.) But in the letter sent to Dr. Pirelli, plaintiff said that his finger had been seen by a corrections doctor and that he had an appointment scheduled with a specialist. (*Id.*) From that letter, it cannot be inferred that Dr. Pirelli knew plaintiff faced a serious medical risk. Besides the letter, plaintiff does not indicate an additional reason why Dr. Pirelli knew of a serious risk to plaintiff's medical condition.

Plaintiff's proffered claims are not sufficient to establish the requisite knowledge by Dr. Pirelli, but the Court grants leave to amend the claim in the event that plaintiff, in good faith, can allege that Dr. Pirelli (or another official) had sufficient knowledge of plaintiff's allegedly serious condition and was indifferent to that knowledge. Plaintiff must keep in mind that in order to survive a motion to dismiss, his complaint must contain enough facts to plausibly state a claim that the official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [ ] also dr[e]w the inference." *Farmer*, 511 U.S. at 837; s*ee also Fransua v .Dr. Vadlamudi*, No. 05-1715, 2008 U.S. App. LEXIS 23236, at *3-4 (2d Cir. Nov. 3, 2008) (affirming dismissal of plaintiff's claim because he did not "allege facts upon which a reasonable juror could infer that defendant doctors possessed the subjective reckless state of mind needed to permit a successful Eighth Amendment deliberate indifference claims"); *Cole v. Fisher*, No 07-11096, 2009 U.S. Dist. LEXIS 45403, at *4 (S.D.N.Y. May 29, 2009) (dismissing complaint because no specific allegations made against defendant other than his position of authority in the Department of Correctional Services); *Myrie v. Calvo*, 591 F. Supp. 2d 620, 628 (S.D.N.Y. 2008) (denying complaint because conclusory allegations about defendant's culpable mental state not enough to show deliberate indifference); *but see Jones v. Westchester County Department of Corrections Medical Department*, 557 F. Supp. 2d 408, 415-

16 (S.D.N.Y. 2008) (holding that claim that defendant made statements explaining reasons for not providing adequate medical care alleges requisite knowledge to survive motion to dismiss).

### B.  Nurse Rick

In his response to defendant's motion to dismiss, plaintiff now contends that he should be able to proceed against Nurse Rick for failure to produce plaintiff with his complete medical records to a finger specialist in a timely manner.  Plaintiff argues that Nurse Rick's training in medicine alerted defendant to the severity of plaintiff's injuries and to what steps should have been taken to alleviate those injuries.  Plaintiff asserts that he would state a claim if he alleged Nurse Rick was personally responsible for scheduling proper appointments for Plaintiff.  As discussed above, the Court assumes someone was in charge of plaintiff's medical care, but from the alleged facts, accepted as true, it is not plausible to believe it was Nurse Rick.

### IV.    State Claims

Defendants also moves to dismiss plaintiff's state law claims for a lack of subject matter jurisdiction.  In addressing supplemental jurisdiction, a federal court looks to the substantive law of the state.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).   New York law bars lawsuits against prison employees in their personal capacity for damages arising out of "any act done or the failure to perform any act within the scope of the employment and in the discharge of duties by such officer or employee."  New York Corr. Law § 24.  *See Baker v. Coughlin*, 77 F.3d 12, 13-14 (2d Cir. 1996) (holding that even though § 24 only refers to actions in state court, it applies to state claims brought in federal court).  Plaintiff is also barred from suing officials under New York law in their official capacities.  The Eleventh Amendment precludes states from

being sued unless they waive immunity, which has not occurred here. *See Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 472 (1987).

Plaintiff urged this Court to reserve dismissal of the claims made under New York law pending the Supreme Court's decision (recently issued) in *Haywood v. Drown*, 129 S. Ct. 2108 (May 26, 2009). In *Haywood,* the Supreme Court held that New York State Correction Law § 24 was unconstitutional because it violates the Supremacy Clause in barring federal § 1983 claims for damages from New York state courts. *Id.* at 2115. Since states have created courts of general jurisdiction, they cannot procedurally bar federal § 1983 claims in those state courts. *Id.* at 2117. The Supreme Court, however did not hold that N.Y. Corr. § 24 is unconstitutional in its bar of state claims in state courts; it only held that state courts must be open to § 1983 federal claims. *Id.* at 2115. Therefore, under New York law, it is proper to dismiss plaintiff's state claims for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated, the Court GRANTS the defendant's motion to dismiss without prejudice.

SO ORDERED.

Dated: New York, New York
August 7, 2009

Richard J. Holwell
United States District Judge

15